ALLEN, Judge.
The appellants challenge a final order of the Department of Insurance (the department) by which the appellants were found to have violated provisions of the insurance code. We conclude that section 626.988(2), Florida Statutes, does not apply to insurance agencies, as opposed to individual agents, and therefore set aside that portion of the final order by which the department determined that the agency involved herein had violated this statutory provision. We also conclude that federal statutes and regulations do not preempt the department’s regulatory authority pursuant to section 626.9541, Florida Statutes.
James K. Mitchell is a licensed insurance agent in Florida. The corporate entities which he founded, collectively referred to herein as JMC, entered into an agreement with Barnett Banks involving the sale of insurance products, including annuities, in Barnett Branch Banks located in Florida. Under this arrangement persons licensed as insurance agents and securities brokers and employed by JMC solicited Barnett customers to purchase the insurance products. Barnett acted as trustee and purchased the insurance products on the customers’ behalf and held the insurance products in trust.
The department alleged various violations of chapters 624 and 626, Florida Statutes. It alleged that the appellants had formed an illegal association with Barnett Bank for the purpose of selling life insurance products in Florida, in violation of section 626.988(2). It also alleged that JMC had violated section 626.9541 by engaging in unfair or deceptive acts in the sale of life insurance products through Barnett Bank.
At a 120.57(1) hearing, the hearing officer found violations of section 626.9541 in that the appellants had engaged in unfair and deceptive acts, and that James K. Mitchell had aided in those practices in violation of sections 626.621(12) and 626.611(7), Florida Statutes. But the hearing officer concluded that section 626.988(2) did not apply to JMC as an agency, because that statute by its own terms was specifically aimed at agents and solicitors.
The department entered a final order adopting all the hearing officer’s findings of fact and most of his conclusions of law. The department concluded that JMC violated section 626.9541(l)(b), based on findings of the hearing officer that JMC failed to adequately *336 inform customers that they were not investing in a Barnett Bank account, but rather were buying an insurance product from insurance agents. With regard to violations of section 626.988(2), however, the department disagreed with the hearing officer’s conclusion that the subsection could not apply to JMC as an agency.
Section 626.988(2), Florida Statutes, prohibits an “insurance agent or solicitor” licensed by the department from engaging in insurance activities through an association with a financial institution. The department erred in determining that the legislature intended to include agencies, in addition to agents and solicitors, within the prohibition of the subsection. This was an incorrect interpretation of the statute because the subsection does not refer to insurance agencies. The terms “agent” and “solicitor” are defined in Chapter 626, and the definitions do not include an insurance agency, which is defined separately.
The appellants contend that the federal laws and regulations which permit national banks to sell annuities preempt state laws which regulate third-party insurance agents who sell such annuities through a contract with a national bank. They specifically contend that such third-party agents may not be regulated pursuant to section 626.9541(l)(b), Florida Statutes. Because the state law here is directed to insurance agents, and not a national bank, and because the federal law otherwise fails to indicate a preemptive intent, we conclude that the state law is not preempted.
National banks derive their powers from the National Banking Act. 12 U.S.C.A. § 24 sets forth the corporate powers of national banking associations under eleven headings. The seventh heading provides in pertinent part:
Seventh. To exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts of bills of exchange, and other evidence of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of title 62 of the Revised Statutes. The business of dealing in securities and stock by the association shall be limited to purchasing and selling such securities and stock without recourse, solely upon the order, and for the account of, customers, and in no case from its own account, and the association shall not underwrite any issue of securities or stock ...
(Emphasis supplied.) Pursuant to this grant of incidental power, national banks may sell annuities, either as an agent or through a third-party agent, as part of their authority to purchase and sell financial investment in-, struments. See NationsBank v. Variable Annuity Life Ins. Co., — U.S. -, 115 S.Ct. 810,130 L.Ed.2d 740 (1995).
Section 626.9541 delineates unfair methods of competition and deceptive acts or practices in the insurance industry. Subsection (l)(b), pertaining to false information and advertising generally, prohibits:
Knowingly making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public:
1. In a newspaper, magazine, or other publication,
2. In the form of a notice, circular, pamphlet, letter, or poster,
3. Over any radio or television station, or
4. In any other way,
an advertisement, announcement, or statement containing any assertion, representation, or statement with respect to the business of insurance, which is untrue, deceptive, or misleading.
Section 24 expresses no explicit congressional intent to preempt state law. Compare Jones v. Rath Packing Co., 430 U.S. 519, 525 & 530-31, 97 S.Ct. 1305, 1309-1310 & 1312-13, 51 L.Ed.2d 604 (1977). And neither the structure and purpose nor nonspecific statutory language of section 24 reveals a preemptive intent. Compare Barnett Bank v. Nel *337 son, — U.S. -, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996). This statute has not created a scheme of federal regulation so pervasive as to lead one to conclude that Congress left no room for supplementation by the states. Compare Pennsylvania R.R. v. Public Serv. Comm., 250 U.S. 566, 40 S.Ct. 36, 64 L.Ed. 1142 (1919). Indeed, the sole federal regulation in this area comes from an interagency statement published by the Comptroller of the Currency that is not inconsistent with the state law at issue in this case.
Section 24 is not in irreconcilable conflict with section 626.9541(1)(b) such that compliance with both statutes is impossible. Section 24 empowers national banks to sell annuities, while section 626.9541(1)(b) ensures that such annuities are sold in a manner that is not unfair or deceptive. Clearly, the regulation of unfair and deceptive practices by the third-party agents in this case does not generally preclude the sale of annuities by Barnett Bank. Compare Barnett Bank v. Nelson, — U.S. at -, 116 S.Ct. at 1108.
Barnett Bank v. Nelson, — U.S. at -, 116 S.Ct. at 1103, does not hold that federal banking law has such broad preemptive effect that any conflicting provision of the Florida unfair trade practices laws must be preempted. Barnett Bank involved a different federal statute and state statute which were in direct conflict because the federal statute authorized national banks to sell insurance in towns with a population below 5000 while the state statute absolutely prohibited national banks from selling insurance. And the federal statute at issue there, 12 U.S.C.A. § 92, specifically cites to rules and regulations promulgated by the Comptroller of the Currency that will govern the sales, thereby indicating that Congress intended the Comptroller to regulate sales conducted pursuant to that statute. But Section 24 does not even refer to the sale of annuities, let alone which rules or regulations will govern such sales.
We acknowledge that national banks have broad powers under both the enumerated and incidental grants of the federal banking laws. But we will not presume that Congress intended for the State of Florida to abandon its regulation of insurance agents and agencies in the unfair and deceptive practices growing out of the sale of annuities at a national bank. We therefore conclude that under traditional preemption principles, federal law does not preclude state regulation of the appellants in connection with their sale of annuities at Barnett Banks.
Finally, even if the state law involved in this case would be required to yield under traditional preemption analysis, it would still survive under the reverse preemption doctrine of the McCarran-Ferguson Act. The McCarran-Ferguson Act reverses the normal rules of preemption by providing that state laws enacted “for the purpose of regulating the business of insurance” do not yield to conflicting federal statutes unless the federal statute itself “specifically relates to the business of insurance.” See 15 U.S.C.A. § 1012(b). Section 626.9541(l)(b) clearly is a law enacted “for the purpose of regulating the business of insurance,” and section 24 does not “specifically relate to the business of insurance.” Section 24, which contains no reference to insurance or insurance practices, provides national banks with incidental powers. The power to sell annuities is just one unenumerated incidental power. Thus, rather than an insurance-specific statute, section 24 describes banking in broad and general terms. It is therefore the type of federal legislation to which the McCarran-Ferguson reverse preemption rule applies.
That portion of the final order by which the department concluded that JMC violated section 626.998(2) is set aside. In all other respects, the final order is affirmed.
KAHN and DAVIS, JJ., concur.